IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| GINGER HANSEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No.: 02-PT-2262-E |
| | ) |
| CALHOUN COUNTY, Alabama; | ) |
| CALHOUN COUNTY COMMISSION; | ) |
| and LARRY AMERSON; et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

This cause comes on to be heard upon Defendants Calhoun County and Calhoun County Commission's ("County Defendants") Motion for Summary Judgement, filed on October 8, 2002.[1]

**FACTS AND PROCEDURAL HISTORY**[2]

Plaintiff Ginger Hansen ("Hansen") began serving a felony conviction in the Calhoun County jail on or around September 21, 2000, and she remained incarcerated at all times relevant to this lawsuit. *See* Compl. at ¶¶ 11-13. On or around November 7, 2000, Hansen began a work release program, working at the administrative office of Defendant Larry Amerson ("Amerson"). *Id.* at ¶¶ 14-15. Amerson was the Sheriff of Calhoun County. *Id.* at ¶ 7. Within two days of Hansen beginning work, other female inmates became hostile toward her, intimidating and threatening her to use her work release status as a means of smuggling contraband into the

---

[1] The County Defendants originally filed a Motion to Dismiss. Said motion was converted into this Motion for Summary Judgment by court order on October 10, 2002.

[2] The Parties in their Briefs both treat the allegations in the Complaint as if they were true. For purposes of this Motion, the court will as well.

prison. *Id.* at ¶¶ 16-17. Hansen anonymously reported these incidents to officers and administrative personnel, and later told Max Kirby ("Kirby"), the chief deputy, about the incidents. *Id.* at ¶¶ 18-19. As a result of the reports, the ladies private area, the area where Hansen and other female inmates were housed, was searched. *Id.* at ¶ 20. After the search, several of the female inmates "roughed up" Hansen. *Id.* at ¶ 21.

Again, female inmates threatened Hansen to smuggle contraband into the prison, and again Hansen told Kirby. *Id.* at ¶¶ 22-23. Kirby then asked Hansen to help him catch the attempted smugglers, suggesting that Jerry Pounds, an investigator, would tape the attempted smuggling. *Id.* at ¶¶ 24-25. As a result of the operation, a Mr. Chenowich, the husband of one of the inmates, was arrested for attempting to smuggle contraband into the prison. *Id.* at ¶ 26. Mr. Chenowich called his wife and told her that Hansen had been involved in the sting. *Id.* at ¶ 27. Within two hours of being returned to the general prison population, Hansen was attacked by other inmates, including Mrs. Chenowich. *Id.* at ¶¶ 29, 31-32.

Hansen's troubles were not over yet. After spending time in an observation room and filling out a statement, Hansen was returned to the general prison population. *Id.* at ¶¶ 33-37. Ms. Hansen was again attacked by her fellow inmates. *Id.* at ¶ 41. After the second attack, Hansen was placed in isolation. *Id.* While in isolation, Hansen was denied medical care and was attacked by two employees of the Calhoun County jail. *Id.* at ¶¶ 42-43.[3] Hansen spent approximately eleven weeks in isolation. *Id.* at ¶ 50. Upon her release back into the general population, Hansen was attacked a third time by her fellow inmates. *Id.* at ¶ 48. On or about January 4, 2001, Hansen was released early from the Calhoun County jail. *Id.* at ¶ 49.

---

[3]Those employees were later terminated. *See* Compl. at ¶ 44.

2

Hansen filed this lawsuit on September 12, 2002, alleging claims under 42 U.S.C. § 1983 for violations of her Eighth and Fourteenth Amendment rights. Count I alleges these claims against the County Defendants, while Count II alleges them against Amerson individually. Hansen seeks compensatory damages, punitive damages, and attorney's fees, as well as other forms of relief. The County Defendants now seek summary judgment as to the count filed against them.

## SUMMARY JUDGEMENT STANDARD

Summary judgment may be granted based upon facts developed through pleadings, discovery, and supplemental affidavits, etc., if together, they show that there is no genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party moving for summary judgment bears the initial burden of explaining the basis of his motion. *Celotex*, 477 U.S. at 323. "It is never enough [for the movant] simply to state that the non-moving party could not meet their burden at trial." *Mullins v. Crowell*, 228 F.3d 1305, 1313 (11th Cir. 2000) (quotation omitted). The non-moving party then bears the burden of pointing to specific facts demonstrating that there is a genuine issue of fact for trial. *Celotex*, 477 U.S. at 324. The non-moving party "must either point to evidence in the record or present additional evidence 'sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.'" *Hammer v. Slater*, 20 F.3d 1137, 1141 (11th Cir. 1994) (quotation omitted). Summary judgment is required where the non-moving party merely repeats its conclusory allegations, unsupported by evidence showing an issue for trial. *Comer v. City of Palm Bay*, 265

F.3d 1186, 1192 (11th Cir. 2001) (citation omitted).

Summary judgment will not be granted until a reasonable time has been allowed for discovery. *Comer*, 265 F.3d at 1192. Moreover, "[w]hen deciding whether summary judgment is appropriate, all evidence and reasonable factual inferences drawn therefrom are reviewed in a light most favorable to the non-moving party." *Korman v. HBC Florida, Inc.*, 182 F.3d 1291, 1293 (11th Cir. 1999). Finally, the trial court must resolve all reasonable doubts in favor of the non-moving party, although it need not resolve all doubts in a similar fashion. *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir. 1990).

## ARGUMENTS

The County Defendants first argue that to the extent Hansen's claims against it are based on the Fourteenth Amendment, summary judgment should be granted. According to the County Defendants, the Fourteenth Amendment's due process clause applies only to pre-trial detainees, not to convicted prisoners. *Tittle v. Jefferson County Comm'n*, 10 F.3d 1535, 1539 n.3 (11th Cir. 1994). Thus, her claims must be based on the Eighth Amendment alone.[4]

Next, the County Defendants argue that summary judgment is due on any Eighth Amendment claims against them as well. The County Defendants acknowledge that prison officials are liable for violating the Eighth Amendment when they are "deliberately indifferent" to the substantial risk of harm to inmates or to an inmate's serious medical condition. *See Marsh v. Butler County*, 268 F.3d 1014 (11th Cir. 2001) (*en banc*). However, a local government, like the County Defendants, can be held liable only for those acts "which the [local government] has

---

[4]The County Defendants do note however, that the Eleventh Circuit has held that the standard for providing basic human needs to those incarcerated or in detention is the same under the Eighth and Fourteenth Amendments. *See Lancaster v. Monroe City*, 116 F.3d 1419, 1425 n.6 (11th Cir. 1997); *Hamm v. DeKalb City*, 774 F.2d 1567, 1573-74 (11th Cir. 1985).

officially sanctioned or ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479-80 (1986) (citations omitted). According to the County Defendants, they did not "officially sanction" any of the alleged conduct.

Under § 1983, a court "must identify those officials or governmental bodies who speak with final policymaking authority for the local government actor concerning the action alleged to have caused the particular" violation. *McMillian v. Monroe County*, 520 U.S. 781, 785 (1997). In this case, the County Defendants argue, that final policymaking authority would be Amerson, the sheriff. However, the Eleventh Circuit has held that "an Alabama sheriff acts exclusively for the state rather than for the county operating a county jail." *Turquitt v. Jefferson County*, 137 F.3d 1285, 1288 (11th Cir. 1998) (*en banc*).[5] In *Turquitt*, the Eleventh Circuit did note that while the county is responsible for some aspects of the county jail,

> [N]one of these duties relates to the daily operation of the jails or to the supervision of inmates. The duties of the counties with respect to the jails "are limited to funding the operation of the jail and to providing facilities to house the jail." *Stark v. Madison County*, 678 So. 2d 787, 787 (Ala. Civ. App. 1996). The county commission is charged with erecting and maintaining jails, and each county is required to maintain a jail of sufficient size and strength to secure the prisoners. Ala.Code §§ 11-14- 10, 11-14-13 (1989). In construing these provisions, the Alabama courts have made it clear that the duty of the county to erect and maintain a county jail pertains exclusively to the physical plant of the jail. The duty to "maintain a jail" under § 11-14-10 is merely the duty to keep the "jail and all equipment therein in a state of repair and to preserve it from failure or decline." *Keeton v. Fayette County*, 558 So. 2d 884, 886 (Ala. 1989).

137 F.3d at 1289-90. Ultimately, the court concluded that "none of these duties relates to the daily operation of the jails or to the supervision of inmates." *Id.* According to the County Defendants, under *Turquitt* and *Pembaur*, a county cannot be liable for the type of claims alleged

---

[5]The County Defendants argue that this case is very similar to *Turquitt*.

by Hansen.[6]

In response, Hansen argues that this case involves the kind of "special relationship" recognized in *White v. Lemacks*, 183 F.3d 1253 (11th Cir. 1999). According to Hansen, the court in *White* held that an inmate in a jail may have a substantive due process claim for injuries sustained from a third party. Specifically, the court observed that

> [I]t appears the only relationships that automatically give rise to a governmental duty to protect individuals from harm by third parties under the substantive due process clause are custodial relationships, such as those which arise from the incarceration of prisoners or other forms of involuntary confinement through which the government deprives individuals of their liberty and thus of their ability to take care of themselves.

183 F.3d at 1257. This analysis, Hansen argues, is the basis of her Fourteenth Amendment claim against the County Defendants. In the alternative, Hansen asks for leave to amend the complaint to allege an Eighth Amendment claim.[7] She does not specifically address the County Defendants' argument that a county government cannot be held liable for the type of conduct alleged here.

## CONCLUSIONS OF THE COURT

The subject motion will be granted, based upon *Tittle v. Jefferson County Comm'n*, 10 F.3d 1535 (11th Cir. 1994), and *McMillian v. Monroe County*, 520 U.S. 781 (1997).

---

[6] The County Defendants also point to *Marsh* as an analogous case, in that the defendant sued for lack of adequate medical care and for the county not preventing inmate-on-inmate violence. The court affirmed a dismissal of claims against the county defendant. It did, however, allow claims against the county for structural defects in the jail.

[7] In the Complaint, Hansen asserts that "This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988 and the First, Fourth, Fifth, and Fourteenth Amendment." Compl. at ¶ 1. However, both Count I and Count II of the Complaint are styled as "Violation of the Eight [sic] and Fourteenth Amendment." *See* Compl. at 6-7. Apparently, Hansen has already alleged claims under the Eighth Amendment.

6

This 2nd day of December, 2002.

/s/ Robert B. Propst
**ROBERT B. PROPST
SENIOR UNITED STATES DISTRICT JUDGE**